IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTIN MORENO,

    Plaintiff/Petitioner,

v.                                                    CIV. No. 14-997 JAP/GBW
                                                           CR. No. 12-694 JAP

UNITED STATES OF AMERICA,

    Defendant/Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before me on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody. *Doc. 1*.[1] Upon review of the Motion and the United States' Response (*doc. 9*), I conclude that there is no need for an evidentiary hearing and recommend denial of the Motion.

**I.  BACKGROUND**

    **A.  The Underlying Criminal Case**

On February 27, 2012, law enforcement agents executed a search warrant at 207 El Paso, Farmington, New Mexico, the residence of the Petitioner, Martin Moreno. *See doc. 9*, Ex. 1 at ¶ 21.2. Also included in this warrant was authorization to search two storage lockers located at Farmington Mini Storage, which were believed to contain contraband owned by Petitioner. *Id*. From the residence, agents recovered 1,129 grams

---

[1] Citations to "*Doc.*" refer to docket numbers filed in Case No. 14-CV-997-JP/GBW. Citations to "*Cr. Doc.*" refer to the attendant criminal docket, Case No. 12-CR-694-JP. For filings made on both dockets, only the civil docket number is given.

of marijuana, eight grams of cocaine, eights grams of psilocybin, 62 grams of methamphetamine, two ecstasy pills, seven vials of steroids, various drug paraphernalia, $69,796 in United States currency, and three handguns. *Id*. at ¶ 22; *see also Cr. Doc. 88* at ¶ 12.  From the two storage lockers, agents recovered over a kilogram of cocaine, approximately 120 grams of methamphetamine, and 15 firearms, some of which were stolen. *Cr. Doc. 88* at ¶ 12.  As a convicted felon, Petitioner was prohibited from owning firearms. *See doc. 9*, Ex. 1 at ¶ 51.  Petitioner, who was present at the time of the search warrant's execution, was taken into custody.  After being advised of his Miranda rights, he elected to make a statement, which was video recorded. Petitioner ultimately admitted to owning the narcotics and firearms located in his home and in the storage lockers, and further admitted that the currency recovered from his home was the proceeds of drug sales. *Cr. Doc. 88* at ¶ 12.

On March 28, 2012, a federal grand jury in Albuquerque, New Mexico returned a four-count Indictment charging Petitioner with possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and a count of possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c).  *See Cr. Doc. 13*.  This Indictment was later superseded on March 13, 2013, to correct for a typographical error.  *See Cr. Doc. 48*.

Petitioner was originally represented by Billy Blackburn, Esq., whom he retained. *See Cr. Doc. 11*. On January 10, 2013, Mr. Blackburn filed a Motion to withdraw as counsel, to which Petitioner responded. *See Cr. Docs. 29, 30*. Mr. Blackburn, on behalf of Petitioner, filed a Motion to Appoint Counsel and for Determination of Indigency on February 20, 2013. *See Cr. Doc. 37*. On February 21, 2013, the Court held a hearing to determine counsel, at which it explained that two other potential counsel, Messrs. Davis and De La Garza, had declined appointment, and that Mr. Blackburn would remain on the case until a new attorney could be found. *See Cr. Doc. 39*. The Court ultimately appointed James Baiamonte, Esq. as counsel for Petitioner on February 28, 2013. *See Cr. Doc. 42*. Just two weeks after Mr. Baiamonte's appointment as counsel, Petitioner filed a motion to dismiss him. *See Doc. 50*. The Court denied this motion on March 22, 2013. *See Cr. Doc. 55*. Petitioner brought a second Motion to Dismiss Counsel on May 16, 2013, which the Court denied on May 22, 2013. *See Cr. Docs. 63, 66*.

On June 3, 2013, the United States filed an Information to Establish a Prior Conviction Pursuant to 21 U.S.C. § 851. *See Cr. Doc. 68*. Because Petitioner was charged with an "A-level" narcotics offense, and because he was also charged with use of a firearm in furtherance of such an offense, Petitioner faced a minimum term of imprisonment of 25 years if convicted on both counts. *Id*. On July 17, 2013, an Albuquerque grand jury returned a Second Superseding Indictment, charging Petitioner with an additional three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). *See Cr. Doc. 78*. Also, in light of the impending August 5, 2013 trial date, the parties filed their

3

respective witness lists, proposed jury instructions and voir dire, and notice of experts shortly thereafter. Counsel for the Petitioner, however, was ultimately able to broker a plea agreement that both the Petitioner and the United States found amenable. Not only did the agreement compel the government to remove the Section 851 enhancement it had previously filed, it also guaranteed Petitioner the minimum possible statutory sentence of 180 months by requiring the agreement be made pursuant to Rule 11(c)(1)(C). Petitioner appeared before the Honorable Alan C. Torgerson, United States Magistrate Judge, on July 26, 2013, and entered a plea of guilty. *See Cr. Doc. 86*. At no time during his plea colloquy did Petitioner state that his counsel failed to file any motion on his behalf or that his counsel was otherwise deficient. *See doc. 9*, Ex. 2.

   Because this plea agreement was made pursuant to Rule 11(c)(1)(C), its terms were valid only after being accepted by the district court. On October 31, 2013, Petitioner, with his counsel, appeared before the Honorable James A. Parker, Senior United States District Judge, for sentencing on the matter. *See Cr. Doc. 92*. Judge Parker ultimately accepted the plea agreement and its terms, and sentenced Petitioner to imprisonment for a term of 180 months, followed by 5 years of supervised release. *See Cr. Docs. 92, 93*. Petitioner made no mention to the Court of his counsel's alleged failure to file any motion on his behalf, nor did Petitioner state that he was in any way dissatisfied with his counsel's performance. *See doc. 9*, Ex. 3. Petitioner filed no appeal.

B.     **The Instant Petition**

On November 3, 2014, Petitioner filed a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. *Doc. 1*. In his motion, Petitioner identified the following claims:

> Ground One:  Ineffective Assistance of Counsel. [Counsel] failed to challenge the Search Warrant as Unconstitutional.  The Petitioner ordered the Defense Counsel to a "Franks Hearing" to challenge the Constitutionality of the Invalid Search Warrant, which Counsel failed to do…[2]
>
> Ground Two:  The Search Warrant was in violation of the 4th Amendment of the Constitution, protecting against illegal search and seizure.  The Illegal Search Warrant was in clear violation of the 4th Amendment of the Constitution that protects against illegal searches by not being specific in the places and persons to be searched, making the Search Warrant invalid on it's [sic] face. As well as not having the directive of any time of day or night or the items to be seized.
>
> Ground Three:  Ineffective Assistance of Counsel. [Counsel] failed to file a "Notice of Appeal" of the Petitioner. …
>
> [Ground Four][3]:  At this time the Movant, Martin Moreno, is being deprived of his "Jenks and Brady Material" that he is legally entitled to by Federal rule of Criminal Procdure [sic] 16-A-1.  The Movant, has repeatedly demanded these documents from Attorney James Baiamonte. …

*Id*. at 4-5.

---

[2] At the end of Ground One, Petitioner complains that his attorney failed to file a notice of appeal. Because that claim is made independently in Ground Three, it is not repeated here.

[3] It is unclear whether this is a separate claim under §2255 or just a complaint.  In an abundance of caution, the undersigned will address it as a claim.

**II.    ANALYSIS**

    **A.    Generally Applicable Law**

Each of Petitioner's claims alleges ineffective assistance of counsel. An ineffective assistance of counsel claim requires a showing that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that his counsel was constitutionally deficient, a defendant "must show that his counsel's representation fell below an objective standard of reasonableness." *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995) (quoting *Strickland*, 466 U.S. at 688). Under *Strickland*, a defendant must show that his counsel's "identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When claiming ineffective assistance of counsel, it is not enough to make conclusory arguments or vague descriptions of the claimed deficient performance. *United States v. Fisher*, 38 F.3d 1144,

6

1147 (10th Cir. 1994).  Tested against these standards, I conclude that the Petition is without merit and recommend it be denied.

> **B.  Petitioner Has Not Shown Deficient Performance or Prejudice due to his Counsel's Failure to Challenge the Search Warrant Pursuant to *Franks v. Delaware*.**

In *Franks*, the Supreme Court held that where a warrant affidavit contains a statement, necessary to the finding of probable cause, that is demonstrated to be both false and included by an affiant knowingly and intentionally, or with reckless disregard for the truth, the warrant is not valid.  *Franks v. Delaware*, 438 U.S. 154 (1978).  However, Petitioner presents no allegations, let alone evidence, of any false statements by the warrant's affiant.  Without an allegation based on some offer of proof, a motion for a *Franks* hearing would have been meritless.  Thus, "counsel's performance cannot be said to be deficient because counsel is not required by the Sixth Amendment to file meritless motions."  *United States v. Rushin*, 642 F.3d 1299, 1311 (10th Cir. 2011) (quotation and citation omitted).  Moreover, without evidence of false statements that were necessary to the finding of probable cause, Petitioner cannot show prejudice under the second prong of *Strickland*.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Because Petitioner has not shown deficient performance or prejudice, I recommend rejecting his first claim.

### C.  Petitioner Has Not Shown Ineffective Assistance due to his Counsel's Failure to Challenge the Search Warrant on Specificity or Time of Execution Grounds[4]

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. Because Petitioner's arguments on specificity and time of execution grounds are meritless, his ineffective assistance of counsel claim must fail.

#### 1.  *The Search Warrant Properly Authorized Nighttime Execution*

Petitioner argues that the search warrant that authorized the search of his home and of his storage lockers was invalid, in part, because it did not "hav[e] the directive of any time of day or night." *Doc. 1 at 4*. This claim does not survive a review of the record.

---

[4] While it is not entirely clear, the undersigned construes Petitioner's claim regarding the warrant's specificity and time of execution as a claim of ineffective assistance of counsel for not raising these matters. If Petitioner were making these claims independently, they would be subject to procedural default because he did not raise them on appeal. *See United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) ("Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal.") (citation omitted). If Petitioner intended to make this claim independent of an allegation of ineffective assistance of counsel, in his objections he must alert the Court of this intent, and (i) show cause excusing his procedural default, and demonstrate actual prejudice resulting from these alleged errors, or (ii) show that a fundamental miscarriage of justice will occur if his claim is not addressed. *Id*.

Both the application for a search warrant, and the judicial order authorizing the search warrant, reference the need for a nighttime search warrant execution. In the "Affidavit for Search Warrant," the Affiant set forth the following request and factual justification:

> Your affiant is respectfully requesting authorization of a Nighttime Search for the above listed addresses located at 207 El Paso, Farmington NM, San Juan County, and 1090 W. Murray Dr. Farmington NM, San Juan County, Units R2l and Q17, for the following reasons:
>
> There are an undetermined number of other possible subjects that may have access to the above mentioned residences and storage units. These other subjects may have the opportunity to possibly destroy any potential evidence, i.e. drug paraphernalia, illegal narcotic substances, etc.

*Doc. 9*, Ex. 5 at 10.  Upon reading and considering the facts sworn to in the Affidavit, the issuing judge approved the warrant, and additionally approved an "Authorization of Nighttime Search" endorsement, stating "I further find that reasonable cause has been shown for nighttime execution of this Warrant, for the reasons mentioned in the affidavit. *Id*. at 13.  Petitioner's Fourth Amendment argument in this regard is therefore meritless and he suffered no prejudice by defense counsel's failure to raise it.

    2.    *The Warrant and Application Were Sufficiently Specific Regarding the Places to be Searched and the Items to be Seized*

Petitioner also contends that the search warrant at issue was invalid because it was not sufficiently precise in terms of the places to be searched or the items to be seized.  *Doc. 1* at 4.  This argument too lacks any foundation.

A review of the application for search warrant and the search warrant itself indicate with more than sufficient precision the locations the agents wished to search and the items they intended to seize.  Agents requested a search warrant for Petitioner's residence, located at 207 El Paso, Farmington, NM, San Juan County, which the Affiant described as "a single story dwelling that sits north and south on the property." *Doc. 9*, Ex. 5 at 1.  The Affiant further explained that "[t]he residence is brown in color with the front door facing east [and] [t]he numerics 207 are black in color and affixed to the right of the front door."  *Id*.

Also in the application, agents sought authorization to search Petitioner's storage lockers, located at Farmington Mini Storage 1090 W. Murray Farmington NM, San Juan County Unit R21 and Unit Q17, which the Affiant described as being "made of gray cinder block with white tin roofs with blue garage doors that face east."  *Id*.  He additionally described the "property [a]s surrounded with a chain link fence with a secured gate that allows access to the units." *Id*.

Regarding the property the agents sought to seize, the Affiant stated that he believed that "[n]arcotics, paraphernalia, money and contraband, as well as evidence relating to the sale of illegal narcotics" would be found at the above locations.  *Id*.  More specifically, the Affiant sought permission to search for documentary evidence, particularly, "evidence of drug sales including cash proceeds, books, records, receipts, notes, ledgers, airline tickets, money orders and other documents relating to the

10

transportation, ordering, sale and distribution of controlled substances." *Id*. at 2. The Affiant stated his belief that such items would not only be found in the structures themselves, but also possibly in an outbuilding or vehicle. *Id*.

The Affiant also sought permission to search for drug packaging and processing supplies, such as "baggies, tools for cutting such as razor blades or knives, scales for weighing . . . product, equipment or devices to use or ingest drugs, literature on the manufacturing of controlled substances and records of . . . illicit dealings on notepads or other similar paper produces, or on computer hard drives or removable computer storage devices." *Id*. The Affiant went on to explicitly request permission to search for cash and firearms, both of which were, in the Affiant's experience, frequently found in drug trafficking operations. *Id*. The Affiant additionally sought authority to search for and seize indicia of ownership of the properties "including, but not limited to letters addressed to the occupants, insurance and registration papers, notes, photos, and clothes that indicate the size, age and sex of the occupants." *Id*.

The Affiant was quite precise in his description of the types of digital devices he was requesting to search for and seize, particularly cellular phones. *Id*. at 2-3. Here, the Affiant sought permission to search for and seize "cellular telephones, computers, [e]lectronic data processing and storage devices, computers and computer systems including central processing units; internal and peripheral storage devices such as fixed discs, external hard disks, floppy disk drives and diskettes, tape drives and tapes,

computer disks, USB mass storage devices, optical storage devices, compact discs, DVD data discs, flash memory devices, memory cards, or other electronic data storage devices; digital cameras and related digital storage devices for such cameras, peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, and related communications devices such as modems, together with backup media, system documentation, software and instruction manuals, magnetic media such as tape, cassette, disk, diskette or memory storage devices such as optical disks, programmable instruments such as telephones, 'electronic calendar/address books', calculators, wristwatches, personal communication service (PSC) devices, or any other electronic storage media, cellular telephones and electronic data storage devices contained within any cellular telephones." *Id*.

      When the judge authorized the warrant, he incorporated the scope of the search described and requested by the affiant into the warrant -- specifically approving the search and seizure only in the locations described and only of the items detailed in the affidavit.  *Doc. 9*, Ex. 5 at 12.

      In light of the Affiant's exacting description of the properties to be searched, his very thorough listing of items he sought to search for and recover, and the incorporation of his descriptions into the warrant itself, no serious argument could be made that the search warrant was so lacking in specificity that it was constitutionally invalid.  As such, his attorney was not ineffective for failing to make it.

Thus, because both arguments within Petitioner's second claim are without merit, I recommend rejecting it.

### D.  Petitioner Has Presented No Evidence that His Counsel was Ineffective with Respect to the Failure to File a Timely Notice of Appeal

In his third claim, Petitioner asserts that his counsel rendered ineffective assistance by failing to timely file a notice of appeal. *Doc. 1* at 8. Pursuant to *Strickland v. Washington*, counsel is ineffective in violation of the Sixth Amendment if a petitioner can demonstrate both that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defendant." 466 U.S. at 687-88 (1984). "[A] lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." *United States v. Snitz*, 342 F.3d 1154, 1155-56 (10th Cir. 2003) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). This is true even if counsel believed that the appeal was without merit. *United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007). Therefore, if a defendant "actually asked counsel to perfect an appeal, and counsel ignored the request," counsel was per se ineffective and "[the defendant] will be entitled to a delayed appeal." *United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).

However, the only factual assertion Petitioner makes regarding this claim is that his counsel failed to file a timely notice of appeal. He does not assert that he instructed

13

his attorney to file the notice of appeal.[5]  When a defendant does not instruct counsel regarding whether to appeal or not, counsel has a duty to "consult"[6] with a defendant about an appeal only if (1) a "rational defendant would want to appeal" or (2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Roe*, 528 U.S. at 478-80.  Failure to engage in this consultation when it is required constitutes objectively unreasonable representation under the first prong of *Strickland*.  *Id*.  "[A] highly relevant factor in this inquiry [is] whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."  *Id.* at 480.

Under the circumstances of this case, there are no facts which would support a finding that Petitioner's counsel had a duty to consult with him about appealing.  Petitioner had pled guilty to the crime.  Moreover, his guilty plea included a plea agreement in which he waived the right to file an appeal.  These facts strongly suggest that Petitioner sought an end to the judicial proceedings.  Even assuming his counsel

---

[5] Had he done so, an evidentiary hearing would have been required notwithstanding counsel's affidavit to the contrary.  *See United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007); *United States v. Garrett*, 402 F.3d 1262, 1266 (10th Cir. 2005); *see also United States v. Lee-Speight*, 529 F. App'x 903 (10th Cir. 2013).  Unfortunately, it is not clear that the waiver of appeal rights in Petitioner's plea agreement changes this result.  The government cites to *United States v. Romero-Cruz*, 245 F. App'x. 797, 800-01 (10th Cir. 2007) (unpublished) in support of this proposition.  However, *Romero-Cruz* was addressing whether equitable tolling should be applied to a late petition.  *See also United States v. Mittag*, 2008 WL 2510122, *2 (N.D.Ok. June 18, 2008) (same); *Lopez-Osceguera v. United States*, 2007 WL 3464164, *1-*2 (D.Utah Nov. 14, 2007) (same).

[6] In consulting with a defendant, counsel should "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes."  *Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000).

did not consult with him about an appeal after the guilty plea, such a failure would not constitute ineffective assistance of counsel because neither of the two predicates requiring such consultation are present here. Thus, I recommend rejecting Petitioner's third claim.

> E.   **Petitioner Has Presented No Evidence of his Right to Disclosure under the Jencks Act or *Brady*.[7]**

Petitioner asserts that he was deprived of his "'Jenks and Brady Material' that he is legally entitled to by Federal rule of Criminal Procdure [sic] 16-A-1. The Movant, has repeatedly demanded these documents from Attorney James Baiamonte." On its face, this claim can be rejected. The authorities cited by Petitioner create a responsibility for the government to turn over certain materials to counsel prior to trial. Petitioner does not assert that the materials he seeks were not provided to his counsel. Petitioner's complaint is that his attorney will not give him a copy at this time. First, this issue is not cognizable under § 2255 because it is not a claim to be released from custody. *See United States v. Papa*, 97 F. App'x 848, 851 (10th Cir. 2004) (unpublished). Second, it is clear from the documents submitted by Petitioner himself that he was provided a copy of the documents in the past and is simply seeking another copy of them. Neither the Constitution nor any statute creates such a right. Thus, I recommend rejecting Petitioner's fourth claim.

---

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

### III. CONCLUSION

Having reviewed the matter, I conclude that each of Petitioner's claims lacks merit or is subject to waiver. Therefore, I recommend denial of each claim and dismissal of the Petition with prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**